IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENSETIX, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| and | § | |
| | § | |
| THE BOARD OF REGENTS OF THE | § | |
| UNIVERSITY OF TEXAS SYSTEM, | § | CIVIL ACTION NO. 4:17-CV-01025 |
| | § | |
| Involuntary Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| BAYLOR COLLEGE OF MEDICINE, | § | |
| DIAKONOS RESEARCH, LTD., and | § | |
| WILLIAM K. DECKER | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT WILLIAM K. DECKER'S MOTION TO DISMISS

Defendant William K. Decker, Ph.D. ("Dr. Decker") moves to dismiss

Plaintiff Gensetix, Inc.'s ("Gensetix") breach of contract, tortious interference with

prospective business relationships, and promissory estoppel claims (Counts 3-6) for

failure to state a claim on which relief can be granted, pursuant to Federal Rule of

Civil Procedure 12(b)(6). [1]

---

[1] Gensetix's claims for patent infringement, tortious interference with an existing contract, civil conspiracy, and declaratory judgment (Counts 1, 2, 7, 8, and 9) are the subject of a separate motion to dismiss filed by Baylor College of Medicine ("BCM"). Dr. Decker joins BCM's Motion to Dismiss the First, Second, Seventh, Eighth, and Ninth Counts of Gensetix's Complaint.

1

## I.   INTRODUCTION

Dr. Decker has spent the last sixteen years working on a cure for cancer.  His research began at MD Anderson, where he made notable discoveries about the role of dendritic cells in stimulating an immune response to cancer.  MD Anderson obtained certain patents based on his work and ultimately granted Gensetix a license to those patents.  In 2011, Dr. Decker moved to Baylor College of Medicine where he has made new and independent discoveries that are the subject of pending Baylor patent applications.

With this lawsuit, Gensetix complains that its licensing arrangement with MD Anderson gives it unfettered control over Dr. Decker and his research, even if unrelated to Gensetix's license.  Gensetix's Complaint makes conclusory and contradictory allegations about Dr. Decker's alleged breach of a Non-Disclosure Agreement and interference with prospective business relationships, none of which establish a plausible right to relief.

## II.   ARGUMENT & AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of an action "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007) (internal quotation marks omitted)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A claim does not suffice where "it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements" will not do.  *Id.*

Gensetix's Complaint fails to plead sufficient facts to state a plausible claim for breach of contract, promissory estoppel, or tortious interference with prospective business relationships against Dr. Decker.  Its claims should be dismissed.

### A. <u>Gensetix Fails to State a Claim for Breach of Contract (Third Count).</u>

Under Texas law, the elements of a claim for breach of contract are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach."  *Lewis v. Bank of America NA*, 343 F.3d 540, 544-45 (5th Cir. 2003); *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Gensetix has failed to adequately plead the breach, causation, and damages elements of its contract claim.

Gensetix alleges Dr. Decker entered into a "Non-Disclosure and Confidentiality Agreement," whereby Gensetix agreed to provide Dr. Decker with "confidential information about Gensetix's intellectual property rights, assessments,

financials, and other sensitive information that belonged to Gensetix" in exchange for his promise not to disclose that information without permission.  Compl. ¶¶ 97, 100.  Gensetix alleges Dr. Decker breached that agreement by disclosing Gensetix's confidential information to Diakonos without permission, and that "as a result of Decker's breach, Diakonos is now developing commercial treatments for the benefit of Diakonos, Decker, and BCM instead of for the benefit of Gensetix and UT." Compl. ¶¶ 100, 101.  Gensetix claims damages "in the form of lost intellectual property licenses, lost revenue, and lost goodwill." Compl. ¶ 102.  We accept the truth of these allegations, as we must, solely for purposes of this Motion to Dismiss.

In its 26-page Complaint, the Non-Disclosure and Confidentiality Agreement Dr. Decker allegedly breached is mentioned only once.  In the seven short paragraphs devoted to its breach of contract claim, Gensetix fails to plead *any* fact identifying the specific confidential information the Non-Disclosure and Confidentiality Agreement protected, the specific confidential information Dr. Decker allegedly disclosed to Diakonos, or how the alleged disclosure of Gensetix's confidential information caused Gensetix to lose intellectual property licenses, revenue, or goodwill.

The holes in Gensetix's contract claim become even clearer when examined through the lens of Gensetix's purported damages.  The damages Gensetix is seeking in this lawsuit—monetary relief for patent infringement as well as lost intellectual

4

property licenses and related revenue—have nothing to do with the unauthorized disclosure of the kind of private, confidential information Gensetix claims was protected by its Non-Disclosure and Confidentiality Agreement with Dr. Decker. Instead, Gensetix's entire case is based on the theory that Defendants are making unauthorized use of ***public, patented*** inventions licensed to Gensetix.

An owner of intellectual property has two options for its protection.  It can either keep the information confidential and seek trade-secret protection to prevent others' use, or it can patent the information by publicly disclosing it and charging others for its use.  *See Carson Prods. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979) ("A trade secret differs fundamentally from a patent in that a patent is information which gains legal protection precisely because it is made public.").

MD Anderson and UT opted to patent certain discoveries made by Dr. Decker by making full, public disclosure of that information.  In this lawsuit, Gensetix claims its Exclusive License Agreement with UT gives it the right to be paid for the alleged use and development of that public, patented information and an ongoing right to be the exclusive licensee of any and all technology produced by Dr. Decker. By definition, none of that information could be subject to Gensetix's Non-Disclosure and Confidentiality Agreement with Dr. Decker because it lies in the public domain.

Defendants disagree with Gensetix's characterization of the License Agreement, but Gensetix's general theory of the case explains its inability to state a plausible claim for relief based on Dr. Decker's alleged breach of the Non-Disclosure and Confidentiality Agreement: It is Gensetix's alleged rights in the asserted patents that are valuable to Gensetix and that form the basis of its damages claim. Gensetix has not alleged any fact that demonstrates how Dr. Decker's alleged disclosure of Gensetix's own private information caused it to lose intellectual property licenses and related revenue, nor could it. Gensetix's breach of contract claim should be dismissed.

### B. Gensetix Fails to State a Claim for Promissory Estoppel (Sixth Count).

Perhaps because the one valid contract it has with Dr. Decker does not entitle Gensetix to the damages it seeks, Gensetix devotes a great deal of its Complaint to discussion of a separate, "handshake deal" between Dr. Decker and Gensetix. At various times throughout its Complaint, Gensetix alleges that, in May of 2015, it provided funding for Dr. Decker's lab in reliance on his promise that he would "cooperate with Gensetix" and " 'refrain[] from any activities that might not be in [Gensetix's] best interests' if Gensetix provided the requested funding." Compl. ¶ 59. Gensetix also alleges that "Decker understood and agreed that if his cancer treatments were to become more widely available, then Gensetix would be entitled to the benefits and revenues as a result of Gensetix's investments." *Id.* ¶ 119.

Gensetix claims Decker "nonetheless diverted the money and now is developing commercial treatments for the benefit not of Gensetix but of third parties such as Diakonos and BCM," and that it has "suffered damages as a result, in the form of lost intellectual property licenses, lost revenue, and goodwill." Compl. ¶¶ 120, 122. Gensetix cites this alleged broken promise as an independent claim for damages (Sixth Count), and in support of its claims for tortious interference with prospective business relations (Fourth and Fifth Counts), discussed below.

Promissory estoppel is a defensive, equitable doctrine that prevents an attack on the enforceability of a contract: "[W]here there is actually no contract, the promissory estoppel theory may be invoked, thereby supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite and substantial reliance." *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965). Where the promisee has failed to bind the promisor to a legally sufficient contract, but has acted in reliance upon a promise to his detriment, the promisee is only entitled to be put in the position he would have been in had he not acted in reliance on the promise. *Id.* at 97.

Gensetix's promissory estoppel claim functions as an admission that Dr. Decker's alleged promise to cooperate with Gensetix did not amount to a binding contract. Thus, if Gensetix were to successfully prove that it reasonably relied on that promise to its detriment, it would be limited to recovering whatever it paid in

reliance on the promise: "It is well settled that damages for promissory estoppel are 'not measured by the profits that such party's reliance led him to expect, but instead are limited to the amount necessary to compensate that party for a loss already suffered." *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (quoting *Sun Oil Co. v. Madeley*, 626 S.W.2d. 726, 734 (Tex. 1981)).  In the absence of an enforceable contract, Gensetix is barred from recovering as damages the intellectual property licenses, revenue, and goodwill it contends were the benefit of its bargain.  *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) ("[B]enefit-of-the-bargain damages are not available for fraud that induces a nonbinding contract; rather, if there is a defect in contract formation, the only potentially viable measure of fraud damages is the out-of-pocket measure."); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("[T]he Statute of Frauds bars a fraud claim when, as here, the plaintiff seeks to obtain the benefit of an otherwise unenforceable bargain.").  Thus, as pleaded, Gensetix's "promissory estoppel" theory of recovery is barred as a matter of law.

Moreover, Gensetix's factual allegations pertaining to the alleged promise and Gensetix's reliance on that promise do not meet the *Twombly/Iqbal* pleading standard.  Promissory estoppel requires 1) a promise, 2) foreseeability of reliance on that promise by the promisor, and 3) actual, substantial, and reasonable reliance by the promisee to its detriment.  *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686

8

n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).  "The asserted 'promise' must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action." *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The promise must be "more than speculation of future events, a statement of hope, or an expression of opinion, expectation, or assumption." *Esty v. Beal Bank S.S.B.,* 298 S.W.3d 280, 305 (Tex. App.—Dallas 2009, no pet.).  Finally, estoppel requires that the promisee's reliance on the promise be reasonable or justified.  *Holt*, 987 S.W.2d at 142 (quoting S*impson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 108 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

Gensetix appears to allege that Dr. Decker's promise to "cooperate" in some unspecified way and to "refrain from any activities that might not be in Gensetix's best interest" in exchange for some limited funding gave Gensetix an unfettered future right to control and profit from Dr. Decker's entire body of work for the rest of his life. *See* Compl. ¶¶ 59-61.

It is hard to imagine a less specific promise than one to cooperate and refrain from acting outside another party's best interest. *See* Compl. ¶¶ 59, 60, 61 ("Decker broke his promise to cooperate with Gensetix.").  In the absence of concrete terms, Gensetix's claimed reliance on the alleged promise could not have been reasonable or justified. *See Holt*, 987 S.W.2d at 142 ("[I]n the absence of a definite promise of

9

specific items of equipment, [Plaintiff's] reliance was not reasonable or justified as a matter of law."). And Gensetix's Complaint is devoid of any specific facts explaining what it means by Dr. Decker's alleged "diverting" of the funds Gensetix claims to have paid in reliance on his promise, or how his alleged use of those funds harmed Gensetix. *See* Compl. ¶¶ 120, 121. Instead, the Complaint conclusively states "Decker's misconduct has caused and continues to cause harm to Gensetix." Compl. ¶ 121.

In sum, Gensetix is attempting to recover benefit-of-the-bargain damages without an enforceable contract and has failed to allege specific facts describing a definite promise on which Gensetix reasonably relied to its detriment. Thus, Gensetix has failed to state a claim on which relief can be granted. Its promissory estoppel cause of action should be dismissed.

## C. <u>Gensetix Fails to State a Claim for Tortious Interference with Prospective Business Relationships (Fourth & Fifth Counts).</u>

In order to prevail on a tortious interference with prospective business relationships claim, the plaintiff must establish the following: "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the

plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

Gensetix takes two shots at stating a claim for tortious interference with prospective business relationships.  First, Gensetix alleges Dr. Decker interfered with its efforts to acquire certain patent rights from BCM.  Second, Gensetix claims Dr. Decker interfered with a potential partnership arrangement with Fannin Innovation.  Gensetix has failed to adequately plead any one of the five required elements of its tortious interference claim with respect to either alleged prospective relationship.

### 1.  BCM

Gensetix alleges that in the summer of 2014, it "sought to acquire patent rights for any patent applications that Decker or BCM may submit for cancer treatments based on the technology covered by the Gensetix Exclusive License Agreement." Compl. ¶ 43.  Gensetix contends that "[w]hile Gensetix and BCM were in discussions and exchanging draft agreements," Decker approached BCM and "made statements that disparaged and/or discouraged BCM from concluding their agreements with Gensetix."  *Id.* ¶¶ 44-45.

Notably, Gensetix's allegation that it was negotiating a new licensing agreement for BCM's patents wholly contradicts its claim that Gensetix's Licensing

Agreement with UT afforded it an automatic right to be paid for the use and development of that technology.   But even if there was some way to square Gensetix's allegation that it was negotiating a new licensing arrangement with BCM with its other claims, Gensetix has not pleaded sufficient facts to state a plausible claim for tortious interference with its prospective relationship with BCM.

To meet the first, "reasonable probability" prong of the cause of action, "a plaintiff must prove that more than mere negotiations occurred." *Richardson–Eagle, Inc. v. William M. Mercer, Inc.,* 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Milam v. Nat'l Ins. Crime Bureau,* 989 S.W.2d 126, 132 (Tex. App.—San Antonio 1999, no pet.)).   Aside from its conclusory statement that a business relationship was "reasonably probable," Gensetix fails to allege any specific fact suggesting its "discussions" with BCM arose to anything more than mere negotiations.   On that basis alone, its tortious interference claim should be dismissed.

Gensetix's allegation pertaining to the second prong of its tortious interference claim simply parrots the elements of the cause of action: "On information and belief, Decker willfully and intentionally interfered with Gensetix's business opportunities and deliberately acted in a way that would cause the business dealings with BCM to suffer."   Compl. ¶ 106.

This Court recently considered a similar set of allegations on a 12(b)(6) motion to dismiss:

> Absent actual knowledge of the prospective contract or business relation, interference cannot be intentional. . . . Moreover, interference is not improper if the defendant had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose. …
> Here, GSSI summarily alleges intent by stating 'BHL asserted its wanton, specious, baseless, and malicious claims against the GSSI Counter-Plaintiffs with the intent of harming their business and the market for geosteering services and the GSSI software.' Without more, this claim cannot survive.

*BHL Boresight, Inc. v. Geo-Steering Solutions, Inc.,* No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016) (internal citations and quotation marks omitted) (Harmon, J.).  The Court found the plaintiff's claim for tortious interference was "utterly devoid of any factual allegation that [Defendant] had actual knowledge of a prospective business relation and its desire to interfere in that relation was its primary purpose in doing so."  *Id.*

Gensetix's claim suffers from the same fatal flaws.  Gensetix pleads no facts that would permit the Court to draw the inference that Dr. Decker acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur.  Other than calling them "disparag[ing] and/or discourag[ing]," Gensetix has not even ventured a guess at what Decker allegedly said to BCM, leaving no clues to his intent.  Nor has Gensetix alleged any

fact supporting its conclusory statement that Dr. Decker was aware of Gensetix's efforts to acquire patent rights from BCM.

Gensetix has also failed to allege that Dr. Decker's interfering conduct was independently tortious. A defendant's conduct is independently tortious only if the plaintiff can "prove that the defendant's conduct would be actionable under a recognized tort." *Sturges,* 52 S.W.3d at 726. "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.*; *see also Apani Southwest, Inc. v. Coca-Cola Ent., Inc.,* 300 F.3d 620, 635 (5th Cir. 2002) ("Apani's claim must fail for . . . the absence of an unlawful act.").

In *Sturges*, the Texas Supreme Court provided a series of examples of tortious or unlawful conduct that would support a claim for tortious interference with prospective business relationships. Those examples included the following: "a defendant who makes fraudulent statements about the plaintiff to a third person, a defendant threatening a person with physical harm if he does business with the plaintiff, and defendants engaging in an illegal boycott." *Sturges,* 52 S.W.3d at 726*; see also Video Ocean Grp. LLC v. Balaji Mgmt. Inc.,* No. Civ. A. H-03-1311, 2006 WL 964565, at *5 (S.D. Tex. Apr. 12, 2006).

Gensetix does not allege any similar action. Gensetix does not claim that Dr. Decker made defamatory or fraudulent statements to BCM to prevent it from

entering into a relationship with Gensetix. Gensetix simply alleges that he "disparaged and/or discouraged" BCM from dealing with Gensetix. Discouragement is not a tort. Disparagement could be tortious if the statements were false, but Gensetix has not alleged that anything Dr. Decker said to BCM was false. *See Sturges,* 52 S.W.3d at 726 ("If . . . the defendant's statements are not intended to deceive . . . then they are not actionable."); *see also Cooper v. Harvey,* 108 F. Supp. 3d. 463, 471-472 (N.D. Tex. 2015). Indeed, Gensetix has not alleged with any degree of specificity what it is that Dr. Decker said.

Gensetix has also failed to allege any causal link between Dr. Decker's alleged statements and Gensetix's failure to obtain a license from BCM. A cause of action for tortious interference with prospective business relations requires the plaintiff to show "at a minimum, that the tortious conduct constitutes a cause in fact that prevented the prospective business relationship from coming to fruition in the form of a contractual agreement." *COC Serv., Ltd. v. CompUSA, Inc.,* 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004, pet. denied) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *see also BHL Boresight, Inc.*, 2016 WL 8648927, at *12 ("In a tortious interference claim, a plaintiff must be able to show that the act of interference was the proximate cause of the damages suffered by it.") (internal quotation marks omitted) (emphasis added).

Gensetix broadly claims that Dr. Decker's interference "caused Gensetix injury and damages by depriving it of intellectual property licenses and related revenue." Compl. ¶ 47. But Gensetix does not allege any fact that would allow the Court to infer that but for Dr. Decker's "wrongful conduct," BCM would have licensed its patents to Gensetix. Gensetix simply states, "[a]fter BCM's conversations and meetings with Dr. Decker, BCM informed Gensetix that it was no longer interested in concluding the assignment agreements." Compl ¶ 44. With no facts describing the content of Dr. Decker's alleged remarks or their effect on BCM, all that remains is Gensetix's unadorned accusation that Dr. Decker's unidentified statements unlawfully harmed it. The federal pleading standard demands more. *Iqbal*, 556 U.S. at 678.

Finally, other than Gensetix's own vague statement that it has been "depriv[ed] of intellectual property licenses and related revenue," nothing in its Complaint permits the Court to infer that had BCM licensed its intellectual property to Gensetix, Gensetix would have derived revenue from that arrangement. *See BHL Boresight, Inc.*, 2016 WL 8648927, at *12 (finding general allegation that "Counter-Plaintiffs have been harmed, resulting in actual damages and the loss of prospective contracts" insufficient to meet the pleading standard). The BCM intellectual property Gensetix is concerned about is the subject of two patent applications—not

16

issued patents.  There is nothing in the Complaint to suggest that BCM, Diakonos, or anyone else is enjoying any revenue based on the intellectual property in question.

Perhaps anticipating that Dr. Decker's unidentified statements to BCM would be inadequate to state a claim for damages based on tortious interference with prospective business relations, Gensetix attempts to salvage the claim by repackaging other causes of action.  Gensetix bootstraps Dr. Decker's alleged tortious interference with Gensetix's existing license agreement with UT (Gensetix's Seventh Count) as the independent tort supporting its claim for tortious interference with its prospective relationship with BCM:

> Decker's interference in the prospective business relationship between Gensetix and BCM was independently wrongful.  In particular, Decker refused to cooperate with Gensetix's efforts to close the BCM assignment while also tortiously interfering with Gensetix's performance of certain commercialization and clinical trial progress obligations under the existing Exclusive License Agreement contract between Gensetix and UT.

Compl. ¶ 45.

As explained at length in BCM's separate motion to dismiss, Gensetix has failed to state a plausible claim for relief on its tortious interference with contract cause of action against BCM or Decker.  *See* Def. Baylor College of Medicine's Memorandum in Support of its Motion to Dismiss § IV.B.  Failure to adequately plead the underlying tort is itself a basis for dismissal.  *See U.S. Enercorp, Ltd. v. SDC Montana Bakken Exploration, LCC*, 966 F.Supp.2d 690, 704 (W.D. Tex. 2013)

(finding plaintiff's tortious interference claim was inadequately pleaded where plaintiff failed to state a claim for the underlying tort).

Moreover, the few facts Gensetix has pleaded in support of this bootstrapped claim reveal Dr. Decker's alleged interference with Gensetix's licensing agreement to be a far cry from the kind of fraudulent, violent, or illegal conduct the *Sturges* court found to be sufficient to state a claim for tortious interference with prospective business relations.  Gensetix claims Dr. Decker hindered its ability to perform its obligations to UT by "encouraging BCM to refuse to grant Gensetix licenses to Decker patent applications"; "[b]ringing Diakonos, instead of Gensetix, to BCM as a commercialization partner"; "[r]eneging on his promise to Gensetix to work on commercialization of the inventions for the benefit of Gensetix"; and "[r]efusing to cooperate with Gensetix's efforts to secure additional funding and investment for commercialization and clinical trial activities."  Compl. ¶ 78.  While Gensetix may view this alleged conduct as sharp or unfair, it is not the kind of conduct that gives rise to a claim for tortious interference with prospective business relations.  *See Sturges,* 52 S.W.3d at 726.

More importantly, Gensetix has failed to allege any causal connection between Dr. Decker's alleged interference with Gensetix's existing licensing arrangement with UT and Gensetix's failure to obtain a license from BCM.  Gensetix's obligation to perform under the licensing arrangement with UT exists

independently of Gensetix's negotiations with BCM.  Nothing Dr. Decker allegedly did to interfere with Gensetix's existing arrangement with UT could have caused Gensetix's inability to secure a license to BCM's own intellectual property.

Gensetix also suggests its claim for tortious interference with BCM is supported by Dr. Decker's alleged breach of his "handshake deal" to cooperate with Gensetix:

> Decker's interference in the prospective business relationship between Gensetix and BCM was also independently wrongful because that interference reneged on a promise he had made to Gensetix to assist with commercialization activities for the benefit of Gensetix based on the substantial funding Gensetix had provided to Decker.

Compl. ¶46.

Gensetix bootstraps its promissory estoppel theory of recovery to its tortious interference claim in hope of 1) salvaging the claim; and 2) securing damages to which it is not otherwise entitled.   The independent tort requirement differentiates the tort of interference with prospective business relationships from ordinary consequential damages.  A breach of a contract to supply goods, for example, might potentially cause the buyer to lose an opportunity to resell to a third party.  That loss, however, does not subject the seller to liability for tortious interference with the buyer's prospective sale to the third party.  Only when the seller's conduct is independently tortious can that potential loss be made a separate tort, and then only

when there is a direct causal connection between the tort and the claimed loss. *See Sturges,* 52 S.W.3d at 713; *BHL Boresight, Inc.*, 2016 WL 8648927, at *12.

As explained in Section II.B, Gensetix does not even claim to have an enforceable contract with Dr. Decker obligating him to cooperate. But even if there were such a contract, Dr. Decker's breach, without some independent tort, would not give rise to a claim for tortious interference with Gensetix's prospective business relationship with BCM. Nor has Gensetix pleaded any facts that would permit the Court to infer that Dr. Decker's alleged broken promise to cooperate caused BCM to abandon its negotiations with Gensetix. By suggesting this alleged broken promise is an adequate substitute for an independent tort, Gensetix simply tries to make an end-run around the fact that it has no enforceable contract with Dr. Decker that would entitle it to the damages it seeks.

### 2. *Fannin Innovation*

With respect to Fannin Innovation, Gensetix alleges Fannin sent potential partnership terms to Gensetix in April 2015, and that Gensetix was encouraged based on those proposed terms "that there was a reasonable probability that it would enter into a business relationship (a partnership that would at least include shared costs, shared equity, and management services) with Fannin Innovation." Compl. ¶ 49. Gensetix claims the deal never closed because Dr. Decker "refused to cooperate and assist Gensetix in closing the Fannin Innovation deal" and was "secretly negotiating

with Diakonos for his own deal for the benefit of himself and Diakonos rather than Gensetix." *Id.* ¶ 50.  Gensetix repeats its claim that Dr. Decker's interference was "independently wrongful" because he refused to cooperate "while also tortiously interfering with Gensetix's performance . . . under the existing Exclusive License Agreement contract between Gensetix and UT," and "reneged on a promise he had made to Gensetix to assist with commercialization activities for the benefit of Gensetix." *Id.* ¶¶ 51, 52.   Gensetix claims Fannin Innovation was "unwilling to invest its time and capital because such a venture was too risky without the cooperation of Decker." *Id.*

Gensetix's Complaint completely skirts the issue of what, specifically, Dr. Decker did to interfere with the prospective deal with Fannin.  Gensetix's vague statements about Dr. Decker's "non-cooperation" highlight the absence of the second required element of the tort—a conscious desire to prevent the relationship or knowledge that interference was substantially certain to occur.  *See Coinmach Corp.*, 417 S.W.3d at 923.  Failing to cooperate is a passive act, not an active one. Gensetix has failed to allege any fact that would permit the Court to infer that Dr. Decker acted with intent to interfere in Gensetix's relationship with Fannin.

Moreover, Gensetix's allegations fall far short of pleading an independent tort sufficient to support a claim for tortious interference.  As noted above, neither the breaking of an unenforceable promise to cooperate, nor tortious interference with

Gensetix's contract with UT satisfy the "independently tortious conduct" element of Gensetix's tortious interference claim.

Even if Dr. Decker's alleged interference amounted to an independent tort, Gensetix fails to plead any fact describing a causal connection between either "wrongful" act and Fannin's decision not to move forward with the deal.  Gensetix offers no explanation of how Dr. Decker's alleged interference with Gensetix's licensing agreement with UT impacted its negotiations with Fannin.  And, according to the Complaint, the alleged "handshake deal" that Gensetix claims gave rise to Dr. Decker's duty to cooperate was not reached until May 2015, after Fannin presented the deal, and possibly after Fannin had walked away.  *See* Compl. ¶¶ 59-61.  Thus, Gensetix has pleaded no facts that would permit the Court to infer that the alleged tortious interference with contract or breach of an agreement to cooperate caused Fannin's decision not to move forward with Gensetix.

Finally, Gensetix's damages allegations are vague, confusing, and contradictory.  In its description of the "Facts as to All Counts," Gensetix says Decker's interference with the Fannin deal caused injury and damages "by undermining and delaying Gensetix's ability to share costs, fund, and manage commercialization activities and clinical trials" and by causing Gensetix to have to spend "time and money searching for other potential business partners." Compl. ¶ 53.  In the section labeled "Fifth Count (Tortious Interference with Fannin),"

Gensetix describes its damages as "lost revenue, and goodwill."  Compl. ¶ 116. Gensetix pleads no facts whatsoever suggesting how its relationship with Fannin would have resulted in cost savings, much less revenue, or what efforts it made to find other potential business partners.

The few facts pleaded in support of Gensetix's tortious interference with prospective business relations theories "do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).  Its claims must be dismissed.

## III.   CONCLUSION

Gensetix's Complaint fails to plead sufficient facts to state any plausible claim for relief against Dr. Decker.  Thus, Dr. Decker respectfully requests that the Court dismiss Gensetix's breach of contract, tortious interference with prospective business relationships, and promissory estoppel claims (Counts 3-6).

Respectfully submitted,

**FOGLER, BRAR, FORD,
O'NEIL & GRAY, LLP**

By:  /s/ *Murray Fogler*
         Murray Fogler
         Federal ID No. 2003
         State Bar No. 07207300
         mfogler@fbfog.com
         711 Louisiana, Suite 500
         Pennzoil Place, South Tower
         Houston, Texas  77002

713.481.1010 (main)
713.574.3224 (fax)
**ATTORNEY IN CHARGE FOR
DEFENDANT WILLIAM K. DECKER**

**OF COUNSEL:**
Robin O'Neil
State Bar No. 24079075
S.D. Tex. No. 1618035
**FOGLER, BRAR, FORD,
O'NEIL & GRAY, LLP**
711 Louisiana, Suite 500
Pennzoil Place, South Tower
Houston, Texas  77002
713.481.1010 (main)
713.574.3224 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Defendant William K. Decker's Motion to Dismiss was served in compliance with the Federal Rules of Civil Procedure on June 2, 2017, on the following counsel of record:

Paul Skiermont
Sarah E. Spires
**SKIERMONT DERBY, LLP**
2200 Ross Avenue, Suite 4800@
Dallas, Texas 75201
(214) 978-6600 (phone)
(214) 978-6601 (fax)
pskiermont@skiermontderby.com
sspires@skiermontderby.com

Donald Kreger
Imron Aly
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (phone)
(312) 258-5600 (fax)
dkreger@schiffhardin.com
ialy@schiffhardin.com

**Counsel for Plaintiff**

Paul Richard Morico
Elizabeth Durham Flannery
Amy Pharr Hefley
Lindsay Volpenhein
**BAKER BOTTS LLP**
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234 (phone)
(713) 229-7732 (fax)
paul.morico@bakerbotts.com
amy.hefley@bakerbotts.com
lindsay.volpenhein@bakerbotts.com
liz.flannery@bakerbotts.com

Jeff Gritton
**BAKER BOTTS LLP**
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
(512) 322-2624
jeff.gritton@bakerbotts.com

**Counsel for Defendant Baylor College of Medicine**

*/s/ Murray Fogler*
**MURRAY FOGLER**