IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENSETIX, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| and | § | |
| | § | |
| THE BOARD OF REGENTS OF THE | § | |
| UNIVERSITY OF TEXAS SYSTEM, | § | CIVIL ACTION NO. 4:17-CV-01025 |
| | § | |
| Involuntary Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| BAYLOR COLLEGE OF MEDICINE, | § | |
| DIAKONOS RESEARCH, LTD., and | § | |
| WILLIAM K. DECKER | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT WILLIAM K. DECKER'S MOTION TO DISMISS PURSUANT TO THE TEXAS CITIZENS' PARTICIPATION ACT

Defendant William K. Decker, Ph.D. ("Dr. Decker") files this Motion to Dismiss Gensetix's tortious interference with prospective relations, tortious interference with contract, and conspiracy claims pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code, commonly referred to as the Texas Citizens' Participation Act or "TCPA."

## INTRODUCTION

The TCPA was enacted in 2011 to facilitate early dismissal of meritless lawsuits arising from the exercise of constitutionally-protected rights. *ExxonMobil*

*Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (quoting TCPA § 27.002).  The law permits a party defending any legal action that implicates the right of free speech or association to file an early motion to dismiss the claims, forcing the responding party to produce "clear and specific" evidence of each required element of its claims.  *Id.* at 898-899 (citing TCPA §§ 27.005(b)-(c)).

Gensetix's poorly pleaded tortious interference claims and related claim for civil conspiracy are precisely the type of legal action the TCPA is intended to deter. Very little is clear from the tangled web of conclusory allegations Gensetix stiches together in hope of stating a claim for tortious interference, but there is one unmistakable common thread: Dr. Decker's alleged interference implicates constitutionally protected communications relating to a matter of public interest— getting life-saving cancer treatments to patients in need—and his right of association.  Thus, the TCPA requires Gensetix to demonstrate a "clear and specific" basis for its allegations before its claims may proceed.

## FACTUAL & PROCEDURAL BACKGROUND

Dr. Decker has spent the last sixteen years working on a cure for cancer.  His research began at The University of Texas MD Anderson Cancer Center ("UT"), where, from 2004 to 2011, he made notable discoveries about the role of dendritic cells in stimulating an immune response to cancer.  *See* Am. Compl. ¶ 1.  UT

obtained certain patents based on his work and, in 2014, granted Gensetix a license to commercialize the patented technology.  *Id.* ¶¶ 25, 27, 28.

In 2011, three years prior to the Gensetix license agreement with UT, Dr. Decker moved to Baylor College of Medicine ("BCM") where he has made new and independent discoveries that are the subject of pending BCM patent applications. *Id.* ¶¶ 31, 79.  In 2014, Gensetix also attempted to obtain a license to BCM's intellectual property.  *Id.* ¶ 41.  After over a year of unsuccessful negotiations with Gensetix, BCM extended a license to Diakonos Research, Ltd. ("Diakonos") instead. *Id.* ¶¶ 68, 72.

Gensetix then brought this lawsuit against Dr. Decker and others alleging, among other things, that Dr. Decker interfered with its prospective relationship with BCM by discouraging BCM from licensing its technology to Gensetix, making disparaging statements about Gensetix's ability to commercialize the technology, and bringing Diakonos to BCM as a potential commercialization partner.  *See id*. ¶¶ 51-52; 68-72.  Gensetix asserts that this same conduct interfered with Gensetix's ability to perform its licensing agreement with UT, and that Dr. Decker, BCM, and Diakonos conspired to interfere with that agreement.  *See id*. ¶¶ 129-131; 143-145.

Gensetix also alleges that Dr. Decker interfered with another prospective business relationship with Fannin Innovation by "communicating with them to

disparage and/or discourage Fannin Innovation from concluding its agreement with Gensetix." *Id.* ¶¶ 54-57, 178.

The vague and conclusory allegations set forth in Gensetix's Original Complaint, which was served on Dr. Decker on April 19, 2017, did not provide any clues as to the content of the alleged "disparaging statements" Gensetix contends Dr. Decker made.  Nor did Gensetix's pleading include any specific facts that would permit the Court to infer whether he had the requisite intent to interfere with Gensetix's prospective business relationships or its licensing agreement with UT, or whether his alleged interference caused Gensetix's claimed damages.   Thus, Dr. Decker and BCM filed motions to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Gensetix's barely decipherable allegations failed to state any plausible claim for relief.  *See* Dkt. Nos. 22, 23.

Instead of defending its original pleading, Gensetix amended its complaint on June 23, 2017, adding new factual allegations relating to its claims.  Dkt. No. 26. Even on its second try, Gensetix still fails to state any claim on which relief can be granted.  Its First Amended Complaint is the subject of Dr. Decker's and BCM's Motions to Dismiss, filed together with this Motion.

But Gensetix's amended pleading does include one important change.  For the first time in its Amended Complaint, Gensetix specifically identifies the statement it claims Dr. Decker made in order to interfere with its prospective business

4

relationships and with its licensing agreement with UT: "[O]n information and belief, Decker's disparaging statements to BCM included many false allegations, including assertions that Gensetix would not be able to commercialize the IP, at least in part because 'MD Anderson is pulling [Gensetix's] license' to the UT-Licensed Technology." Am. Compl. ¶ 52.[1]

Dr. Decker denies making this statement.  But it is clear from the face of Gensetix's amended pleading that this legal action is based on and relates to Dr. Decker's rights of free speech and association in connection with a matter of public concern—getting potentially life-saving cancer treatments to the people who need them.  Thus, the TCPA applies, and Gensetix's claims must be dismissed.

---

[1] The TCPA requires the movant to file its motion to dismiss within 60 days of service of the legal action.  TCPA § 27.003(b).  The statute defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."  *Id.* § 27.001(6).  Dr. Decker's motion is timely because it was filed within sixty days of Gensetix's First Amended Complaint, which adds new factual allegations not present in its Original Complaint.  *See Williams v. Cordillera Commun., Inc.*, Civil Action No. 2:13-CV-124, 2014 WL 2611746, at *2 (N.D. Tex. June 11, 2014) (explaining the TCPA "does not limit 'legal action' to the first document requesting relief.") (quoting TCPA § 27.001(6)); *see also James v. Calkins*, 446 S.W.3d 135, 146 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (finding TCPA motion was timely when filed within sixty days of amended complaint that contained substantively different factual allegations).  Alternatively, Dr. Decker asks the Court to extend the time to file the motion for good cause, as permitted by the TCPA.  *Id.* § 27.003(b).

## ARGUMENT

The TCPA is routinely applied as Texas substantive law to state-law claims proceeding in federal courts. *See, e.g., Cuba v. Pylant,* 814 F.3d 701, 706 n.6 (5th Cir. 2016) (citing *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009)); *Lamons Gasket Co. v. Flexitallic L.P.,* 9 F.Supp.3d 709, 711 (S.D. Tex. 2014) (Atlas, J.)*; Vu v. Vu,* Civil Action No. H-16-0366, 2016 WL 3181168, at *4 (S.D. Tex. June 3, 2016) (Lake, J.); *Haynes v. Crenshaw*, 166 F.Supp.3d 773, 776-77 (E.D. Tex. 2016); *Williams*, 2014 WL 2611746, at *1.

The TCPA provides that "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." TCPA § 27.003. The movant has the initial burden of showing by a preponderance of the evidence that the TCPA applies. *Coleman*, 512 S.W.3d at 898 (quoting TCPA § 27.005(b)). If the movant meets that burden, the trial court must dismiss the claims unless the responding party points to "clear and specific evidence" that establishes a prima facie case for each essential element of its claim. *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (quoting TCPA § 27.005(c)).

To determine whether a legal action should be dismissed pursuant to the TCPA, "the court shall consider the pleadings." *Hersh v. Tatum*, No. 16-0096, 2017 WL 2839873, at *4 (Tex. June 30, 2017) (quoting TCPA § 27.006(a)). "[T]he

plaintiff's petition . . . is the best and all-sufficient evidence of the nature of the action." *Id.* (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (1936)) (internal quotation marks omitted).

**1.  The TCPA applies to this case.**

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern."  TCPA § 27.001(3).  A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." 27.001(1).  A "matter of public concern" includes "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

Dr. Decker denies that he made any disparaging statements of any kind and contends that he did not make the only statement specifically alleged in Gensetix's First Amended Complaint.  But "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh,* 2017 WL 2839873, at *4.

Gensetix's amended pleading makes clear that its tortious interference and conspiracy claims against Dr. Decker are based on oral statements he made to BCM, Diakonos, and Fannin Innovation:

- "On information and belief, while Gensetix and BCM were in discussions and exchanging draft agreements, Decker independently approached BCM and, without authority or permission, *made statements that disparaged Gensetix and/or discouraged BCM from concluding their agreements with Gensetix, and encouraged BCM to assign Decker's IP to Dan Faust of Diakonos instead of to Gensetix.*"   Am. Compl. ¶ 51 (emphasis added) (regarding Gensetix's claim involving tortious interference with a prospective relationship with BCM).

- "On information and belief, Decker's *disparaging statements to BCM included many false allegations, including assertions that Gensetix would not be able to commercialize the IP, at least in part because 'MD Anderson is pulling [Gensetix's] license' to the UT-Licensed Technology.*"   *Id.* ¶ 52 (emphasis added) (regarding Gensetix's claim involving tortious interference with a prospective relationship with BCM).

- "Decker willfully and intentionally interfered with Gensetix's existing contract with UT by at least the following acts: (a) *Refusing and encouraging BCM to refuse to grant Gensetix licenses to Decker patent applications*; . . . (b) Bringing Diakonos, instead of Gensetix, to BCM as a commercialization partner, and *encouraging BCM to grant licenses to Decker patent applications and patents to Diakonos*."   *Id.* ¶ 129 (emphasis added) (regarding Gensetix's tortious interference with contract claim).

- "On information and belief, *Decker, BCM, and Diakonos communicated about and agreed to the above-listed acts*."   *Id.* ¶ 140 (emphasis added) (regarding Gensetix's tortious interference with contract and conspiracy to tortiously interfere with contract claims).

- "Decker purposefully and knowingly interfered with Gensetix's business opportunities and deliberately acted in a way that would cause the business dealings with Fannin Innovation to suffer, including by *communicating with them to disparage and/or*

> **discourage Fannin Innovation from concluding its agreement with Gensetix**." *Id.* ¶ 178 (emphasis added) (regarding Gensetix's claim involving tortious interference with its prospective relationship with Fannin Innovation).

Tortious interference and conspiracy claims based on generic allegations of disparaging statements such as these cannot survive dismissal under the TCPA. *See Whisenhunt v. Lippincott*, 474 S.W.3d 30, 44-45 (Tex. App.—Texarkana 2015, no pet.) (dismissing under the TCPA tortious interference and civil conspiracy claims based on disparaging comments made in internal emails by administrators at a medical facility).

Nor can there be any doubt that Dr. Decker's alleged statements were made "in connection with a matter of public concern." *See* TCPA § 27.001(3). In its Amended Complaint, Gensetix claims (for the first time) that Dr. Decker's disparaging statements included "assertions that Gensetix would not be able to commercialize the IP, at least in part because 'MD Anderson is pulling [Gensetix's] license' to the UT-Licensed Technology." Am. Comp. ¶ 52.

"[C]ommercializ[ation] of the IP" is the process by which Dr. Decker's innovative cancer-treatments will reach the patients who need them. The opening paragraph of Gensetix's Amended Complaint says it best: ***"No one disputes that his work, if ever commercialized, will undoubtedly help cancer patients."*** Am. Compl. ¶ 1 (emphasis added). If Dr. Decker's alleged "disparaging statements" and communications with BCM and Diakonos concerned Gensetix's inability to get the

treatments to market, as Gensetix appears to allege, it is hard to imagine any statement that more neatly fits the TCPA's definition of "matter of public concern." *See* TCPA § 27.001(7).  Clearly, delivering new treatments to cancer patients relates to health and safety, community well-being, and getting a product to market.  *Id.*; *see Coleman*, 512 S.W.3d at 900-01 (Tex. 2017) (relying on text of TCPA to hold that statute requires "only that the defendant's statements are 'in connection with' 'issue[s] related to' health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature," and reversing appellate court's holding that relationship had to be more than "tangential").

Lest there be any doubt, the Texas Supreme Court recently explained that a private communication among employees about "the provision of medical services by a health care professional constitutes a matter of public concern." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015) (per curiam); *see also Coleman*, 512 S.W.3d at 900 (holding private communications among company's employees about another employee's failure to comply with safety protocols were made in connection with a matter of public concern).  Surely private communications about an outfit's ability to get life-saving cancer treatments to market are afforded the same status.

Gensetix's claims also relate to Dr. Decker's exercise of his right of association.  The TCPA defines "[e]xercise of the right of association" as "a communication between individuals who join together to collectively express,

10

promote, pursue, or defend common interests."  TCPA § 27.001(2).  Gensetix's

amended pleading makes clear that its tortious interference and conspiracy claims

are also based on Dr. Decker's decision to work on commercialization of his

inventions with Diakonos rather than Gensetix.  Gensetix alleges "Decker willfully

and intentionally interfered with Gensetix's existing contract with UT" by:

- "*Reneging on his promise to Gensetix to work on commercialization of the inventions for the benefit of Gensetix*, in exchange for Gensetix's agreement to fund Decker's work at BCM."  Am. Compl. ¶ 129(d) (emphasis added).

- "*Refusing to cooperate with Gensetix's efforts* to secure additional funding and investment for commercialization and clinical trial activities by *refusing to cooperate and insisting to work only with Diakonos*."  *Id*. ¶ 129(e) (emphasis added).[2]

Gensetix reiterates these allegations in support of its claims for tortious interference

with prospective relationships with BCM and Fannin Innovation.  *Id.* ¶¶ 58-59, 69-

70.

Furthermore, Gensetix has clearly alleged that BCM, Diakonos, and Dr.

Decker are all engaged in a joint effort to commercialize BCM's technology, and

---

[2] Gensetix's tortious interference claim is also based on Dr. Decker's alleged willful infringement of the asserted patents.  Am. Compl. ¶ 129(c).  However, as explained in BCM's Motion to Dismiss, Gensetix's theory finds no support in Texas law. Indeed, if patent infringement were to constitute tortious interference with a license to the patented technology, then tortious interference would follow every licensee's assertion of patent infringement.

that the communications among them were intended to pursue and promote that common interest:

- Alleging Dr. Decker interfered with Gensetix's contract with UT by "[b]ringing Diakonos, instead of Gensetix, to BCM as a commercialization partner, and *encouraging BCM to grant licenses to Decker patent applications to Diakonos*." *Id*. ¶ 129(b) (emphasis added).

- "Decker is now working with Diakonos to commercialize this technology." *Id.* ¶ 132.

- "On information and belief, *Decker, BCM, and Diakonos communicated about and agreed to* the above-listed acts." *Id.* ¶ 140 (emphasis added).

**2. Gensetix's claims must be dismissed.**

Dr. Decker has met his burden of showing by a preponderance of the evidence that Gensetix's tortious interference and conspiracy claims relate to the exercise of Dr. Decker's rights to free speech and association.   The burden thus shifts to Gensetix to produce "clear and specific evidence" that establishes a prima facie case for each element of its claims.   *Coleman*, 512 S.W.3d at 899 (quoting TCPA § 27.005(c)).

Dr. Decker submits Gensetix will not be able to meet that burden.   As explained at length in Dr. Decker's and BCM's Motions to Dismiss, which are incorporated by reference, even on its second try, Gensetix has failed to allege sufficient facts to state a claim for its tortious interference with prospective relations,

tortious interference with contract, or conspiracy.  Gensetix's claims should be dismissed with prejudice pursuant to both Federal Rule of Civil Procedure 12(b)(6) and the TCPA.

**CONCLUSION & PRAYER**

Dr. Decker asks that the Court stay all discovery until the Court has ruled on this motion as required by TCPA § 27.003(c); set a hearing on the motion within 60 days as required by TCPA § 27.004(a); grant his motion to dismiss pursuant to the TCPA § 27.005(b); award attorneys' fees, sanctions, and costs of court to Dr. Decker as mandated by TCPA § 27.009(a); and grant such other and further relief to which he may be entitled.

Respectfully submitted,

**FOGLER, BRAR, FORD, O'NEIL & GRAY, LLP**

By:  /s/ *Murray Fogler*
     Murray Fogler
     Federal ID No. 2003
     State Bar No. 07207300
     mfogler@fbfog.com
     711 Louisiana, Suite 500
     Pennzoil Place, South Tower
     Houston, Texas  77002
     713.481.1010 (main)
     713.574.3224 (fax)
**ATTORNEY IN CHARGE FOR DEFENDANT WILLIAM K. DECKER**

**OF COUNSEL:**
Robin O'Neil
State Bar No. 24079075
S.D. Tex. No. 1618035
**FOGLER, BRAR, FORD,**
**O'NEIL & GRAY, LLP**
711 Louisiana, Suite 500
Pennzoil Place, South Tower
Houston, Texas  77002
713.481.1010 (main)
713.574.3224 (fax)

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant William K. Decker's Motion to Dismiss Pursuant to the Texas Citizens' Participation Act was served in compliance with the Federal Rules of Civil Procedure on July 21, 2017, on the following counsel of record:

Paul Skiermont
Sarah E. Spires
**SKIERMONT DERBY, LLP**
2200 Ross Avenue, Suite 4800@
Dallas, Texas 75201
(214) 978-6600 (phone)
(214) 978-6601 (fax)
pskiermont@skiermontderby.com
sspires@skiermontderby.com

Donald Kreger
Imron Aly
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (phone)
(312) 258-5600 (fax)
dkreger@schiffhardin.com
ialy@schiffhardin.com

Christopher Bruno
**SCHIFF HARDIN LLP**
901 K Street NW
Washington, DC 20001
(202) 724-6838 (phone)
(202) 778-6460 (fax)
cbruno@schiffhardin.com

**Counsel for Plaintiff**

Paul Richard Morico
Elizabeth Durham Flannery
Amy Pharr Hefley
Lindsay Volpenhein
**BAKER BOTTS LLP**
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234 (phone)
(713) 229-7732 (fax)
paul.morico@bakerbotts.com
liz.flannery@bakerbotts.com
amy.hefley@bakerbotts.com
lindsay.volpenhein@bakerbotts.com

Jeff Gritton
**BAKER BOTTS LLP**
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
(512) 322-2624
jeff.gritton@bakerbotts.com

**Counsel for Defendant Baylor College of Medicine**

*/s/ Murray Fogler*
**MURRAY FOGLER**

15