IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENSETIX, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-1025 |
| | § | |
| BAYLOR COLLEGE OF MEDICINE, | § | |
| DIAKONOS RESEARCH, LTD, & | § | |
| WILLIAM K. DECKER, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Involuntary Plaintiff The Board of Regents of the University of Texas

System's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) [Doc. No. 62]. Plaintiff Gensetix

opposes this motion [Doc. Nos. 45, 63], and Defendants Baylor College of Medicine [Doc. Nos.

53, 65] and Diakonos [Doc. No. 55] have filed their own responses. Each party has briefed whether

this Court has jurisdiction over The Board of Regents of the University of Texas System ("UT")

as an involuntary plaintiff pursuant to the Eleventh Amendment, whether UT could be properly

joined under Federal Rule of Civil Procedure 19, and whether Gensetix could have standing to sue

for patent infringement without UT as a plaintiff.[1]

For the reasons set forth below, the Court hereby **GRANTS** UT's Motion to Dismiss [Doc.

No. 62]. The related portions of Defendant Baylor College of Medicine's Supplemental Reply in

Support of its Motion to Dismiss Gensetix's First Amended Complaint [Doc. No. 65] and

---

[1] In addition to standing and sovereign immunity arguments, Docket Numbers 45, 53, 55, and 65 also raise the issue as to whether Plaintiff has stated a claim under Federal Rule of Civil Procedure 12(b)(6). This order focuses solely on the standing, sovereign immunity, and joinder arguments.

Defendant Diakonos' Motion to Dismiss Gensetix's First Amended Complaint [Doc. No. 55] are also **GRANTED**. Furthermore, the Court finds that the Federal Rule of Civil Procedure 19(b) factors weigh in favor of dismissal and declines to exercise supplemental jurisdiction over Gensetix's state law claims. Accordingly, this case is hereby **DISMISSED** without prejudice.

### Factual Background

Plaintiff Gensetix is an exclusive licensee of United States Patent Nos. 8,728,806 and 9,333,248. [Doc. No. 26 at 1]. Plaintiff alleges that Defendant Professor William Decker invented methods of modifying patients' immune systems to kill cancer cells during Professor Decker's tenure at The University of Texas MD Anderson Cancer Center. *Id.* Although Professor Decker is the named inventor on the patents, the methods were invented in the scope of Professor Decker's employment with MD Anderson, thus UT retained title to the patents-in-suit. *Id.* at 4, 2. According to Plaintiff's First Amended Complaint, in September 2008, UT granted Alex Mirrow an exclusive license to commercialize the patented method. *Id.* at 5. In January 2014, Mr. Mirrow assigned his rights in the licensed method to Gensetix ("License Agreement" or "L.A."). *Id.* Then, in June 2014, UT confirmed the assignment, and Gensetix and UT signed an amendment to the original agreement ("Amendment"). *Id.*

Plaintiff alleges that although Decker left UT and retained no rights in the patents, he continues to practice the patented technology at Baylor College of Medicine ("BCM"). *Id.* at 6. Plaintiff points to several abstracts Decker published in 2013 and 2014 and alleges that they describe Decker's use of the patented methods. *Id.* at 6-7. In early 2014, Gensetix claims that it reached out to Decker and BCM seeking to assert its patent rights and to acquire any intellectual property rights Decker and BCM claimed to own based on improvements or new discoveries from their use of the '806 and '248 patented methods. *Id.* at 7-8. Gensetix alleges that BCM was

receptive to the idea of assigning these rights; accordingly, Gensetix sought financial backing from Fannin Innovation. *Id.* at 8-9. As negotiations were moving forward with BCM, Plaintiff claims that Decker secretly interfered with the negotiations by approaching BCM and disparaging Plaintiff and by independently soliciting Defendant Diakonos to enter a licensing agreement that cut Plaintiff out of the deal completely. *Id.* at 9.

Plaintiff alleges that it was unaware of Decker's interfering activities at the time when Decker sought funding from Gensetix to continue research. *Id.* at 11. Gensetix paid Decker, but eventually in June 2015, BCM informed Gensetix that it was no longer interested in the assignment negotiations. *Id.* at 12. Gensetix claims that it lost its financial agreement with Fannin Innovation as a result. *Id.* at 10. BCM eventually assigned rights for any developments allegedly based on the '806 and '248 patented methods to Diakonos. *Id.* at 13. Diakonos offered to sublicense the '806 and '248 patents from Gensetix, but Gensetix declined. *Id.*

Gensetix filed the present suit naming UT as an involuntary plaintiff. [Doc. Nos. 26 at 17; 63 at 1]. Gensetix alleges that Decker, BCM, and Diakonos ("Defendants") continue to practice, improve, and infringe on the '806 and '248 patented methods. [Doc. No. 26 at 17]. Further, Plaintiff claims that Defendants interfered with its contracts with UT and committed civil conspiracy. *Id.* at 26, 39-40. With regard to Defendant Decker, Plaintiff claims that he breached his contract with Gensetix, tortiously interfered with its deals with BCM and Fannin Innovation, and is subject to promissory estoppel for the "handshake agreement" between Decker and Gensetix. *Id.* at 35-39. Gensetix seeks injunctive relief, damages, and a declaratory judgment. *Id.* at 41-42.

The Court now turns to the parties' arguments regarding the Eleventh Amendment, standing, and joinder under Federal Rule of Civil Procedure 19(a).

**Discussion**

## I.     Eleventh Amendment

UT, an arm of the State of Texas,[2] asserts immunity from suit under the Eleventh Amendment and argues that this immunity deprives this Court of subject matter jurisdiction. [Doc. No. 62 at 2]. Accordingly, UT moves to dismiss under 12(b)(1). Plaintiff Gensetix argues that Eleventh Amendment sovereign immunity does not apply where no claims have been asserted against UT.

Dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3). The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Contrary to the parties' arguments, the Eleventh Amendment does not necessarily deprive federal courts of subject matter jurisdiction. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Tegic Comm. Corp. v. Board of Regents of the Univ. of Texas Sys.*, 458 F.3d 1335, 1340 (Fed. Cir. 2006). The Eleventh Amendment confers waivable immunity upon sovereign entities "rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Idaho*, 521 U.S. at 267. Therefore, the Eleventh Amendment does not altogether disqualify federal courts from hearing suits brought against states because states can waive their immunity and "allow a federal court to hear and decide a case commenced" against it. *Id.*

Thus, more accurately, the issue in this case is whether the Eleventh Amendment prevents UT from being joined as an involuntary plaintiff in a patent suit.

---

[2] The parties do not dispute that UT is an arm of the state.

4

Plaintiff argues that the Eleventh Amendment does not bar this brand of joinder. [Doc. No. 63]. Plaintiff cites *Independent Wireless Telegraph Co. v. Radio Corporation of America*, for the proposition that "if there is no other way of securing justice to the exclusive licensee," the licensee may join the licensor "as a coplaintiff without his consent." 269 U.S. 459, 472 (1926). In *Independent Wireless*, Radio Corporation of America sued Independent Wireless for patent infringement. 269 U.S. at 472. The district court found that De Forest Company was the owner and Radio Corporation was an exclusive licensee of the patent-in-suit. *Id.* at 463. Since De Forest owned the patent, the court held it was an indispensable party. *Id.* The district court then dismissed the bill, stating that De Forest had not and could not be properly joined for want of jurisdiction. *Id.* at 460. The Circuit Court of Appeals reversed the dismissal, and the Supreme Court affirmed that decision. *Id.* The Supreme Court held that "if there is no other way of securing justice to the exclusive licensee, the latter may make the owner without the jurisdiction a coplaintiff without his consent in the bill against the infringer." *Id.* at 472. Thus, the Court held, dismissal was improper where De Forest Company could be joined as an involuntary coplaintiff even where it was "beyond the reach of process." *Id.* at 473.

Plaintiff also cites *Regents of the University of California v. Eli Lilly & Co.*, which held that "the Eleventh Amendment applies to suits 'against' a state, not suits by a state" and that where the suit does not involve any actual claims against the state, the state is not in the position of a defendant. 119 F.3d 1559, 1564-65 (Fed. Cir. 1997). The court in *Regents* further explained that the Supreme Court has never construed the Eleventh Amendment as applying to suits in which a state is a plaintiff because the Amendment is meant to protect the state from claims for damages asserted against it, not by it. *Id.* at 1564.

In *Regents*, the patent owner, the University of California ("UC"), voluntarily joined its licensee in a suit against Eli Lilly & Co. for patent infringement. *Id.* After plaintiffs brought suit in the Northern District of California, defendant Eli Lilly & Co. attempted to transfer venue to the Southern District of Indiana. *Id.* Plaintiffs objected to a transfer of venue, stating they had waived their sovereign immunity solely with regard to California federal district courts. *Id.* The Federal Circuit stated that because there were no claims or counterclaims against the University of California, the Eleventh Amendment did not apply. *Id.* at 1564-65. Thus, the court held that it "need not determine whether UC waived its immunity only in California." *Id.* at 1565.

*Independent Wireless* and *Regents* are readily distinguishable from the case at hand. The Court in *Independent Wireless* did not contemplate the coercive joinder of a sovereign. There, the patent owner could not assert the Eleventh Amendment because it was a private company, whereas here, the patent owner is an arm of the state. *Id.* at 461. The Supreme Court did not envision a violation of the Constitution when it utilized the "if there is no other way of securing justice" language. *See Independent Wireless*, 269 U.S. at 472. The court in *Regents* found that the Eleventh Amendment did not apply because there were no claims or counterclaims in that case; however, more importantly, UC had agreed to participate in the suit in the first place. *Id.* Here, although there are currently no claims or counterclaims against UT, UT has been very clear that, unlike UC, it is not voluntarily joining this suit. [Doc. No. 62]. Thus, *Independent Wireless* and *Regents* are not as instructive as Plaintiff contends.

The Court agrees with UT and Defendants that sovereign immunity is applicable to the coercive joinder analysis in this case. Defendants cite an Eighth Circuit case, *Thomas v. FAG Bearings Corp.*, in which the court reversed and remanded the district court's order for involuntary joinder of an arm of a state. 50 F.3d 502, 503 (8th Cir. 1995). The court in *Thomas* held,

The Eleventh Amendment is the constant undercurrent for all state interactions in federal courts. *See, e.g., Puerto Rico Aqueduct*, 506 U.S. at –, 113 S.Ct. at 688 (reaffirming that Eleventh Amendment provides immunity from suit, not merely immunity from liability). It may be circumvented by waiver, abrogation, or a suit against state officials, but federal courts cannot simply deem a state's Eleventh Amendment defense inapplicable.

*Id.* at 506. The court in *Thomas* found that although none of the parties had asserted claims against the state, the court could not conclude that the Eleventh Amendment was inapplicable or irrelevant. *Id.* Accordingly, because the state entity had not waived its immunity, initiated the suit, or agreed to participate in the litigation, the state entity could not be coercively joined. *See id.* at 504, 506.

The court in *Hartley Co. v. JF Acquisition, LLC* similarly held that the Eleventh Amendment prevented coercive joinder of an arm of the state. No. 3:15-cv-94, 2017 WL 1628529, at *4 (S.D. Ohio May 1, 2017). In *Hartley*, the plaintiff owned underground petroleum storage tanks. *Id.* at *1. It paid a yearly fee to the Ohio Petroleum Underground Storage Tank Financial Assurance Fund (the "Fund"), which provides reimbursement to underground storage tank owners "for corrective actions to their properties that are ordered by the [state of Ohio's] Regulations." *Id.* at *2. In an earlier order, the court determined that the Board, who manages the Fund, was a necessary party to Hartley's suit against JF Acquisitions because "The Board's exclusion from th[e] litigation would create an acute risk that JF Acquisitions will incur obligations to both Hartley and The Board for the same liability." *Id.* at *1. The Board requested that the court withdraw its order pursuant to the Eleventh Amendment. *Id.* at *1.

The court found that the Board was an arm of the state, and "an examination of other caselaw" led the court to conclude that the Eleventh Amendment barred the Board's joinder as an involuntary plaintiff. *Id.* at *4. JF Acquisitions cited cases (including *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997)), on which Plaintiff in the present case relies, in which courts held that the Eleventh Amendment does not apply where the state is a

plaintiff. *See Hartley*, 2017 WL 1628529, at *4. Nevertheless, the court distinguished each of these cases stating that:

> [I]n each of those cases, the state had initiated lawsuits, and the defendants either removed the cases to federal court or transferred venue. Those courts, in turn, held that, because the states had initiated litigation, they could not use the Eleventh Amendment to bar defendants' proper exercise of their right to remove or to petition to transfer. None of those cases, however, suggests that a state can be compelled to litigate, in a District Court, a lawsuit which it neither initiated nor agreed to participate in.

*Id.*

This Court finds that joinder of UT as an involuntary plaintiff is barred by the Eleventh Amendment. *See id.*; *see also Thomas*, 50 F.3d at 507. Although there are currently no claims against UT, requiring joinder would, in effect, force UT to pursue claims against its will. The purpose of the Eleventh Amendment is to prevent states from being "compelled to litigate" (i.e., defend *or* pursue claims) in "a lawsuit which it neither initiated nor agreed to participate in." *Hartley*, 2017 WL 1628529, at *4; *see also Thomas*, 50 F.3d at 507. Eleventh Amendment immunity includes immunity from suit. *Thomas*, 50 F.3d at 506. UT did not waive its immunity, initiate this suit, or agree to participate in this litigation; accordingly, the Eleventh Amendment prohibits involuntary joinder.

## II.    Standing

Since the Eleventh Amendment prevents UT's joinder, Gensetix must independently have standing for the infringement claims to survive. The key factor in this analysis is whether UT retained "substantial rights" in the '806 and '248 patents. If it did, Gensetix lacks standing to sue as a licensee.

### a.  Constitutional Standing

Article III of the United States Constitution requires that parties seeking to resolve disputes

before a federal court present actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. This requirement limits "the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Plaintiff, as the party invoking the Court's jurisdiction, bears the burden of satisfying the Article III requirement by demonstrating that it has standing to adjudicate its claims in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The "irreducible constitutional minimum of standing contains three elements." *Id.* at 560. First, a plaintiff must demonstrate that they have "suffered a concrete and particularized injury that is either actual or imminent." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007). Second, a plaintiff must show that there is a causal connection between the alleged injury and the complained-of conduct—essentially, that "the injury is fairly traceable to the defendant." *Id.* Finally, standing requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

### b. Prudential Standing

In addition to the constitutional requirements, "the federal judiciary has also adhered to a set of 'prudential' principles that bear on the question of standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Many opinions refer to these principles as being under the banner of "prudential" standing. *See, e.g., Bennett v. Spear*, 520 U.S. 154, 164 (1997). First, the Supreme Court has held that when the "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone does not warrant exercise of jurisdiction." *Id.* Rather, these "abstract questions of wide public significance" are more appropriately left to the representative branches of the federal government. *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Second, the

plaintiffs must come within the "zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Finally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 474 (quoting *Warth*, 422 U.S. at 499).

### c. Standing in Patent Cases

The standing requirements for a patent infringement suit are outlined in 35 U.S.C. § 281. This statute provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *see also Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) ("Only a 'patentee' can bring an action for patent infringement. . . 'patentee' is defined as including. . .successors in title to the patentee.") (internal citations omitted). The Federal Circuit has addressed the question of standing in the context of licensed patents numerous times.[3] The court has stated that a patent may not have multiple separate owners for purposes of determining standing to sue. *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (citing *Apex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006)). When a patent owner transfers all "substantial rights" in the patents-in-suit to an assignee or licensee, the transfer is "tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee." *Alfred E. Mann*, 604 F.3d at 1358-59 (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 873–74 (Fed. Cir. 1991)). If the licensor retains substantial rights, then the licensee does not have standing to

---

[3] *See, e.g.*, *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 876 (Fed. Cir. 1991) (finding "The contractual documents constituted a transfer of all substantial rights under the patent, thereby permitting [licensee] to sue"); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1134 (Fed. Cir. 1995) (finding licensee who took license subject to existing non-exclusive licenses had co-plaintiff standing); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (finding the assignee of all substantial rights under the patent becomes the effective patentee and can sue in its own name for infringement).

sue for infringement of the licensed patent. *See Alfred E. Mann*, 604 F.3d at 1359 (citing *Apex*, 434 F.3d at 1343). Determining whether the patent owner conferred all "substantial rights" in the patent is a matter of contract interpretation; in other words, we "must ascertain the intention of the parties and examine the substance of what was granted." *Mentor H/S, Inc.*, 240 F.3d at 1017.

### d. UT Retained Substantial Rights in the Patent-in-Suit

To determine whether a licensor has retained substantial rights to the patent-in-suit, courts analyze multiple factors set out by the Federal Circuit. *See Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1350 (2016). Gensetix argues that it holds all substantial rights to the patent and cites *Alfred E. Mann* for the proposition that the right to sue is "the most important consideration." 604 F.3d at 1361. The Court agrees that under *Alfred E. Mann* and its progeny, the right to sue is a key factor in determining which party has substantial rights, but it is not the sole factor. *Luminara*, 814 F.3d at 1350; *Alfred E. Mann*, 604 F.3d at 1361.

The Federal Circuit in *Luminara* held that the licensee, Luminara, obtained all substantial rights through its licensing agreement with Disney where the license gave the licensee the "sole and exclusive right" to sue alleged infringers. 814 F.3d at 1351. Disney Enterprises, the patent owner, granted Luminara's predecessor in interest, Candella, an exclusive license to make, use, develop, and sell products practicing its patented "artificial flame technology." *Id.* at 1346. Candella approached Liown to negotiate a manufacturing agreement for an artificial flame candle, but negotiations broke down. *Id.* Two years later, Liown began selling artificial flame candles in the U.S., and Candella sued for patent infringement. *Id.* at 1347. Candella and Liown settled; however, Liown reneged on the settlement agreement, and Candella again brought suit. *Id.* Candella then merged with Luminara who inherited all rights under the licensing agreement with Disney and Candella's place in the suit against Liown. *Id.*

Liown argued that Disney retained substantial rights in the patent which prevented "Luminara from bringing suit in its own name without joining Disney." *Id.* at 1349. The court used nine factors to determine whether Luminara had the requisite substantial rights: (1) whether the licensor retained the right to sue, (2) if the licensor retained the right to freely license the patent, (3) the scope of the licensee's right to sublicense, (4) the nature of the license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, (5) the right of the licensor to receive a portion of the recovery in infringement suits, (6) the duration of the license, (7) the ability of the licensor to supervise and control the licensee's activities, (8) the obligation of the licensor to continue paying patent maintenance fees, and (9) the nature of any limits on the licensee's right to assign its interests in the patent. *Id.* at 1350 (citing *Alfred E. Mann*, 604 F.3d at 1360-61). The Federal Circuit found (1) the "transfer of the right to sue for infringement" the most critical factor and (2) that through the licensing agreement, Luminara obtained the right to sue without Disney's consent. *Luminara*, 814 F.3d at 1349. The Circuit held that Disney did not retain any exclusionary rights in the patent, and that the other factors similarly weighed in Luminara's favor. *Id.* ("Candella and Disney Enterprises amended their original license agreement four times. Each time, Disney Enterprises gave Candella more rights to the Artificial Flame Technology. . . [thus] Candella had exclusionary rights."). Accordingly, it concluded that Luminara obtained substantial rights sufficient to constitute standing. *Id.* at 1351.

In *Alfred E. Mann*, the licensor, Alfred E. Mann Foundation ("AMF"), gave Advanced Bionics ("AB") an exclusive license to make, use, develop, and sell patented "bionic ears"—a device that improved the hearing of "profoundly deaf or severely-hard-of-hearing patients." 604 F.3d at 1357. Cochlear Corporation and Cochlear Ltd. ("Cochlear") allegedly began producing hearing devices that infringed the licensed patents. *Id.* AB had the "absolute right to decide whether

or not to initiate litigation" for infringement of the licensed patent but failed to do so. *Id.* at 1361. Per the terms of the license, AMF exercised its secondary right to sue Cochlear for patent infringement. *Id.* The district court dismissed the action, holding that AMF lacked standing because the licensing agreement was a virtual assignment of the patent to AB. *Id.* at 1357. The Federal Circuit disagreed. *Id.* at 1356. Although AB had the "right of first refusal" with regard to litigation, AMF retained the right to sue infringers, which the court found inconsistent with a "virtual assignment" of a patent owner's bundle of rights. *Id.* at 1362-63; *see also Mentor H/S, Inc.*, 240 F.3d at 1018 ("Sonique [the legal owner of the patent] has the first obligation to sue parties for infringement; failure to take appropriate action against infringers would constitute a breach of the agreement. Mentor only can sue for infringement in the event Sonique fails to do so."); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) ("Although the agreement effected a broad conveyance of rights to Abbott, Diamedix retained substantial interests under the [patents], and Abbott therefore does not have an independent right to sue for infringement as a 'patentee' under the patent statute."). Where the licensor's right to choose to sue an infringer does not vest until the licensee chooses not to sue but is otherwise "unfettered," the licensor retains substantial rights. *Alfred E. Mann*, 604 F.3d at 1362.

Where Luminara had the "sole and exclusive right" to sue infringers, in the instant case, Gensetix has something less. *Luminara*, 814 F.3d at 1350. Section 7.1 of the License Agreement between Gensetix and UT states that Gensetix, at its own expense, must enforce the patent covered by the license and is entitled to retain recovery from such enforcement. Gensetix emphasizes that it is *required* to sue based on the plain language of the Agreement but does not explain how this changes the analysis. Indeed, it does not. *See Resonant Sensors Inc. v. SRU Biosystems, Inc.*, 651 F. Supp. 2d 562, 571 (N.D. Tex. 2009) (disagreeing with plaintiff-licensee's argument that its

contractual obligation to sue deprives defendant-licensor of all control over the lawsuit where defendant "retained the right to bring suit if plaintiff [did] not do so within six months"). UT retains the right to sue if Gensetix fails to do so within six months of receiving knowledge of alleged infringement. L.A. § 7.1. Although UT's right to sue is secondary and does not "activate" until Gensetix chooses not to sue, "[o]nce its right to sue an infringer activates, [UT] can decide whether or not to bring suit, when to bring suit, where to bring suit, what claims to assert, what damages to seek, whether to seek injunctive relief, whether to settle the litigation, and the terms on which the litigation will be settled." *Alfred E. Mann*, 604 F.3d at 1362. The court in *Alfred E. Mann* found that this broad right to control litigation, even where secondary, is inconsistent with the virtual assignment necessary to confer standing to the licensee. *Id.* Similarly, UT retains a broad right to sue and control litigation; thus, the License Agreement failed to confer standing to Gensetix. *See id.* Accordingly, this key factor weighs against Gensetix.

Although courts have repeatedly held that the right to sue is the most critical factor in the standing determination, the other eight factors are not without significance. *See, e.g., Alfred E. Mann*, 604 F.3d at 1361. A patent is a "bundle of rights" which can be divided or retained in whole or in part, and "[i]n determining whether a grant of all substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what was granted." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991). The other eight *Luminara* factors can be broken down into two categories: the rights retained by the licensor and the limits placed on the licensee. The factors in the former category include (1) the right to freely license the patent, (2) the reversion of rights to the licensor following breaches of the license agreement, (3) the right of the licensor to receive a portion of the recovery in infringement suits, (4) the ability of the licensor to supervise and control the licensee's activities, and (5) the obligation

of the licensor to continue paying patent maintenance fees. The three remaining *Luminara* factors can be categorized as limits placed on the licensee: (1) the scope of the licensee's right to sublicense, (2) the duration of the license, and (3) the nature of any limits on the licensee's right to assign its interests in the patent.

The rights retained by UT weigh against a finding that the License Agreement conveyed all substantial rights to Gensetix. Section 3.1 of the License Agreement states that Gensetix has the "exclusive" right to manufacture, use, import, and sell the licensed product within the "licensed territory" (L.A. § 2.5: "licensed territory means worldwide") for use within the "licensed field" (L.A. § 2.2: "licensed field means all fields of use."). Notably, UT retained the right to publish general findings, use licensed subject matter for research, teaching, or other academic purposes, and transfer rights to other research institutions for non-commercial research use. UT may practice and license the patent for non-commercial use; accordingly, while there are some limits on UT's right to license the patent, it still retains the right to do so. Thus, Gensetix's right to license the patent is not truly "exclusive." *See Sicom Sys., Ltd. v. Agilent Techs.*, 427 F.3d 971, 979 (Fed. Cir. 2005) (distinguishing between commercial and non-commercial infringement, finding the licensor retained the right to sue for non-commercial infringement, and holding that the licensee had therefore not obtained all substantial exclusionary rights); *see also Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("[A] transfer of a particular right or interest under a patent . . . does not depend upon the name by which it calls itself, but upon the legal effect of [the] provision.").

Next, the rights granted to Gensetix under the License Agreement are subject to termination provisions. The termination provisions state that the rights may revert to UT under three circumstances: if (1) UT invokes its secondary right to sue, (2) Gensetix fails to take active steps towards commercializing the patent within three years or fails to commence clinical studies

directed towards human treatment within four years, or if (3) Gensetix's sublicensees do not commercialize the patent. L.A. §§ 7.1; 13.2.[4] The termination provisions run for the life of the license, and if the termination provisions are not triggered, the license expires with the patent. Where termination provisions run for the life of the license, the licensor retains a reversionary interest in the patent. *Cf. Vaupel*, 944 F.2d at 874 ("An assignment of a patent 'may be either absolute, or [. . .] liable to be defeated by non-performance of a condition subsequent. . .'" (quoting *Waterman*, 138 U.S. at 256)); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000) (applying *Vaupel* and *Waterman* but ultimately declining to express an opinion on whether a reversionary right which lacked a termination date affected the licensee's standing to sue).

The court in *Luminara* explained that "[a] financial interest in litigation," "the responsibility to pay maintenance fees," and control over title and licensing activities without more do not constitute a substantial right. 814 F.3d at 1351. Here, UT and Gensetix share a financial interest in litigation because if Gensetix initiates an infringement suit, both entities are entitled to recovery. L.A. § 7.1. Next, Gensetix is responsible for paying maintenance fees; section 4.1 of the License Agreement requires that Gensetix pay "all out-of-pocket expenses in excess of $10,000 incurred by UT in filing, prosecuting, enforcing and maintaining Patent Rights and all such future expenses for so long as and where the license is in effect." Further, the License Agreement requires that Gensetix pay a documentation fee, annual maintenance fees, and various royalty fees. While Gensetix is entitled to a portion of the recovery from an infringement suit and required to pay maintenance fees, these rights are not substantial enough to find that all substantial rights were conveyed by the License Agreement. *See Luminara*, 814 F.3d at 1351.

---

[4] Note that ¶ 7 of the Amendment between the parties replaces § 13.2 of the original license.

The remaining factors—the limits placed on Gensetix—also fail to tip the scales in Gensetix's favor. Gensetix's right to sublicense is addressed in section 3.3. Under section 3.3, Gensetix may grant sublicenses consistent with the terms of the License Agreement. Gensetix is responsible for its sublicensees and must diligently collect all amounts due. L.A. § 3.3. Additionally, Gensetix may assign the patent to a Gensetix affiliate without UT's consent, or a non-affiliate with UT's consent. *Id.* Thus, although Gensetix seemingly has the freedom to sublicense, it is not without limits.

The Court finds that the *Luminara* factors do not weigh in Gensetix's favor. While Gensetix has the right to practice, it does not have the unfettered right to exclude others. *See Alfred E. Mann*, 604 F.3d at 1362. The right to practice is not substantial enough to allow Gensetix to bring suit in its name alone. *See Luminara*, 814 F.3d at 1351. Accordingly, Gensetix does not have standing to sue for infringement of the '806 and '248 patents without joining UT as a party.

## III.    Joinder Under Rule 19

Plaintiff argues that while the Court may join UT as an involuntary plaintiff, UT is not a necessary party under Federal Rule of Civil Procedure 19(a).  [Doc. Nos. 45, 63]. UT and Defendants disagree, stating that UT is a necessary party but may not be involuntarily joined without first waiving its sovereign immunity. [Doc. Nos. 62, 64, 55]. The Court now turns to question of whether joinder of UT is necessary under Rule 19.

Federal Rule of Civil Procedure 19(a) describes when a party is necessary to an action. Rule 19(a)(1) states that a party is required where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19(a)(2) provides the mechanism by which a required non-party may be joined:

> If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(2).

Patent owners who grant exclusive licenses and retain substantial rights in the patent are necessary parties to infringement actions brought by their licensees. *See, e.g., Abbott Labs.,* 47 F.3d at 1132-33 (finding that substantial rights holders are required as a matter of statutory standing and "policies underlying Fed. R. Civ. P. 19, the federal joinder rule"); *US Foam, Inc. v. On Site Gas Sys., Inc.*, No. 6:08-cv-231-LED, 2010 WL 150170, at *1 (E.D. Tex. Jan. 13, 2010) (ordering that a foreign patent owner be joined as an involuntary plaintiff under Rule 19(a)(2) to enable a licensee to sue an alleged infringer). A patent owner "that does not voluntarily join an action prosecuted by its exclusive licensee can be joined as a defendant, or in a proper case, made an involuntary plaintiff if it is not subject to service of process." *AsymmetRX, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1322 (Fed. Cir. 2009) (quoting *Abbott Labs.*, 47 F.3d at 1133).

Since Gensetix did not obtain the "sole and exclusive right" to sue, the Court finds that UT is a necessary party under Rule 19(a)(1). *See Alfred E. Mann*, 604 F.3d at 1363; *Apex Eyewear*, 434 F.3d at 1344; *Independent Wireless*, 269 U.S. at 466. A licensor with substantial rights must be joined to avoid (1) multiple lawsuits on the same patent and (2) the licensor's loss of these rights in an action to which they were not a party. *Luminara*, 814 F.3d at 1350. As discussed above, UT retains the right to sue; thus, UT has a substantial interest in the patents-in-suit. Without UT, Defendants in this case could be subject to multiple suits. Further, were this case to proceed without

UT, UT would risk losing the '806 and '248 patents without the opportunity to defend its rights. Accordingly, the Court finds that UT is a necessary party under Rule 19.

UT filed the motion asking to be dismissed from the case, thus resolving the question of whether it intends to join as a voluntary plaintiff. [Doc. No. 62]. Typically, where a patentee "does not voluntarily join an action prosecuted by its exclusive licensee," the patentee may "be joined as a defendant or, in a proper case, made an involuntary plaintiff" under Rule 19(a)(2). *Abbott Labs.*, 47 F.3d at 1133 (citing Fed. R. Civ. P. 19(a); *Independent Wireless*, 269 U.S. at 468-74). Here, however, UT has not waived its sovereign immunity. Thus, where UT retains substantial rights in the patents-in-suit, refuses to join voluntarily, but retains sovereign immunity, UT may not be joined as an involuntary plaintiff. *See Independent Wireless*, 269 U.S. at 468 (describing the "proper case" for involuntary joinder of a patent owner); *Hartley*, 2017 WL 1628529, at *4 (finding an arm of the state to be a "necessary party," but refusing to join it as an involuntary plaintiff citing sovereign immunity).

Gensetix argues that if UT is a required party, it can be feasibly joined under Rule 19(b). [Doc. No. 63 at 10]. The Court disagrees. Where joinder of a necessary party is not feasible, the Court must weigh the Rule 19(b) factors to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The Rule 19(b) factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In *A123 Systems, Inc. v. Hydro-Quebec*, the Federal Circuit affirmed the district court's dismissal of A123's declaratory judgment suit. 626 F.3d 1213, 1222 (Fed. Cir. 2010). The suit arose out of the alleged infringement of two patents owned and licensed by UT to Hydro-Quebec. *Id.* at 1215. A123, the alleged infringer, filed suit in the District of Massachusetts seeking a declaration of noninfringement and invalidity with respect to the two patents. *Id.* Hydro-Quebec, the licensee and defendant in the declaratory judgment action, moved to dismiss the suit. *Id.* Hydro-Quebec argued that UT was a necessary and indispensable party because UT had transferred "less than all substantial rights in the patents in suit," and that UT could not properly be joined as a defendant based on UT's Eleventh Amendment sovereign immunity. *Id.* at 1216. One month later, UT and Hydro-Quebec jointly brought an infringement suit against A123. *Id.* In response, A123 requested both patents be reexamined by the Patent Trial and Appeal Board. *Id.* The district court in Massachusetts dismissed the declaratory judgment suit without prejudice. *Id.* A123 requested that the Massachusetts court reopen the declaratory judgment suit, but the district court declined and instead "yield[ed] jurisdiction over A123's declaratory judgment suit to the later-filed suit in Texas in light of its conclusion that A123's first-filed action, if reopened, would be subject to imminent dismissal for failure to join a necessary party." *Id.* A123 appealed to the Federal Circuit. *Id.*

The Federal Circuit found that Hydro-Quebec had not obtained all substantial rights to the patent and therefore UT was a necessary party. *Id.* at 1218 ("Under long-standing prudential standing precedent, an exclusive licensee with less than all substantial rights in a patent, such as a field-of-use licensee, lacks standing to sue for infringement without joining the patent owner."). The court also held that UT had not waived Eleventh Amendment sovereign immunity in the

Massachusetts suit. *Id.* at 1219. Since UT was a necessary party but could not be joined, the court considered whether UT was indispensable and dismissal was appropriate under Rule 19(b). *Id.*

The court found that the first Rule 19(b) factor weighed in favor of dismissal because if it reinstated the action and the patents were declared invalid, "UT would lose all rights in its patents despite the fact that it had no opportunity to defend its interests in the litigation." *Id.* Second, the court found that the accused infringer had "not suggested any alternative that would reduce the prejudice to UT." *Id.* at 1222 n.1. Third, the court found that allowing a licensee to sue or be sued without the licensor created a "substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Id.* at 1222 (quoting *A123 Sys., Inc. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 280 (D. Mass. 2009)). Finally, the court considered A123's interest in litigating its defense to claims of infringement and found that "because UT has waived immunity to suit in Texas [by filing suit], A123 may assert counterclaims for a declaration of noninfringement and invalidity in that action." *Id.* The court ultimately affirmed the district court's dismissal on these grounds. *Id.*

In the instant case, with regard to the first factor, a judgment rendered in UT's absence would certainly prejudice UT or the existing parties. In a patent infringement suit, defendants are entitled to assert an invalidity defense. *See id.* Like in *A123*, UT risks an invalidation of its patent without the opportunity to litigate. "We must give sufficient weight to the prejudice to UT, which is absent from this suit based on a claim of sovereign immunity." *A123 Sys., Inc.*, 626 F.3d at 1221. Next, Gensetix has not provided "any alternative that would reduce the prejudice to UT." *See id.* at 1222 n.1. The Court finds that it would not be able to lessen or avoid prejudice to UT.

Third, a judgment rendered without UT would be inadequate under Rule 19(b)'s third factor. BCM argues that in UT's absence, it runs the risk of enduring multiple suits on the same

patents, and "allowing a [licensee] to sue or be sued alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *A123 Sys., Inc.*, 626 F.3d at 1222 (internal quotation marks omitted). Gensetix argues that, "Defendants cannot credibly claim to be prejudiced by UT's absence, as any prejudice stems from risks of duplicate litigation—and as BCM concedes, UT does not wish to bring the litigation against BCM." [Doc. No. 45 at 27]. Nevertheless, the Court declines to determine whether UT would be judicially estopped from later filing suit against BCM for the purposes of this Rule 19(b) analysis.

The fourth factor concerning whether Gensetix would have an adequate remedy if the action were dismissed for nonjoinder seemingly weighs in Gensetix's favor. Only federal courts have jurisdiction over patent infringement claims. 28 USC § 1338. Nevertheless, where the substantial rights holder—here, UT—refuses to sue to protect its own patent, it is not proper for the Court to step in and effectuate a rescue. While the result may be harsh, it is an inherent risk for anyone who chooses to contract with a sovereign entity.

Three out of the four Rule 19(b) factors weigh in favor of dismissal. Accordingly, the Court holds that UT is a necessary and indispensable party, making dismissal appropriate.

## IV.    Supplemental Jurisdiction

Finally, Gensetix has argued that the Court should exercise supplemental jurisdiction over its state law claims. Gensetix alleges that Defendants interfered with its contracts with UT and committed civil conspiracy. Gensetix has also alleged that Defendant Decker breached his contract with Gensetix, tortiously interfered with its deals with BCM and Fannin Innovation, and is subject to promissory estoppel. Each of these causes of action is controlled by state law. The Court declines to exercise supplemental jurisdiction over Gensetix's state law claims. Supplemental jurisdiction is a discretionary power that "need not be exercised in every case in which it is found to exist."

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, the Court finds that "judicial economy, convenience and fairness to litigants" would not be served by keeping the remaining causes of action in federal court. *Id.* Gensetix's claims for interference with a contract, civil conspiracy, breach of contract, tortious interference, and promissory estoppel are dismissed without prejudice.

**Conclusion**

In conclusion, the Eleventh Amendment bars UT's joinder as an involuntary plaintiff. Gensetix does not have standing to assert patent claims against Defendants without UT because UT retained substantial rights in the patent-in-suit. Accordingly, UT's Motion to Dismiss [Doc. No. 62] is **GRANTED**. The related portions of Defendant Baylor College of Medicine's Supplemental Reply in Support of its Motion to Dismiss Gensetix's First Amended Complaint [Doc. No. 65] and Defendant Diakonos' Motion to Dismiss Gensetix's First Amended Complaint [Doc. No. 55] are also **GRANTED**. The Federal Rule of Civil Procedure 19(b) factors weigh in favor of dismissal, and the Court declines to exercise supplemental jurisdiction over Gensetix's state law claims. Accordingly, this case is hereby **DISMISSED** without prejudice.

It is **SO ORDERED**.

SIGNED at Houston, Texas, this *10* day of December, 2018.

Andrew S. Hanen
United States District Judge